SAGAPOLU, Plaintiff

v.

TANIELU, Defendant

No. 19-1921

High Court of American Samoa

Civil Jurisdiction, Trial Division

["Matai" name: "Ulufale"]

October 16, 1922

SYDNEY D. HALL, *President of the High Court;* LEANO, *Associate Member*; and LUTU, *Associate Member*

## JUDGMENT

This cause coming on to be heard and it appearing that the Defendant did on August 20th, 1921, file notice of his intentions to register himself under the "matai" name "Ulufale" and because of this attempt objections arose thereto on the part of certain so-called members of the family. A large number of the members of the family of Ulufale met in the month of August in the year 1921 and agreed to the registration of the "matai" name Ulufale by Tanielu.

Within the period as required by the Regulations objections to the registration of this name were made by certain people who designated themselves as members of

the Ulufale family, and as a result of these objections the matter was properly brought before the High Court.

A large amount of testimony has been taken in this case. The testimony of one side at times wholly disagreeing with the testimony of the other side, this testimony all being based on history handed down by word of mouth or by tradition. It is an absolute physical impossibility for any court to tell which is right or to tell whether either is right. The human mind will err; it is not infallible. Therefore, history passing down by word of mouth is just as accurate and just as inaccurate as the human mind can be accurate and can be inaccurate. The only history; the only tale; and the only story, that can be a truthful story; that can be an accurate story, is the one written down the moment a thing happens, on parchment or some other material, and preserved.

Now, although the testimony has been inaccurate, the Court wants to state that it does not feel that there has been an intentional inaccuracy on the part of anyone. It is merely a mistake of the human mind. Therefore, the Court is guided in no small degree; in no small way, by what to it was the logical thing that happened at the time.

The Court will now analyze some of the testimony in this action and first will take up the testimony given by the objectors or Plaintiffs in this action.

The Plaintiff in this action has not only objected because he objected but he has objected because he claims a "pule" over the name "Ulufale".

■ He claims a "pule" that rests and vests in the name "Auala," and it is not denied that Auala is the father of the Plaintiff Sagapolu-Puaa. Now if the "pule" rests in Auala it cannot rest in Sagapolu. The "pule" cannot rest with a number of people, it must rest with one. Therefore the claim of the objector in this action that he should designate the next succeeding Ulufale is not well founded and it is

the unanimous opinion of the Court in that he is not Auala—he is Sagapolu—if there is any "pule" over the name in the family of Auala it rests and vests in Auala and not in Sagapolu.

That then brings up the question "Has Auala a 'pule' in the name 'Ulufale' and if Auala has a 'pule' in the name 'Ulufale' how did he acquire this 'pule', and does this 'pule' exist as testified to by the objectors?"

It has been testified to that the person who exercised the "pule" and from who the name Auala derived the "pule" was a woman, Ta, who was the daughter of the first Ulufale—Ulufale-Leoo.

The second Ulufale according to the testimony of the Plaintiffs in this action was Ulufale-Taugaifala, the son of Ulufale-Leoo, a person who held the name Ulufale but apparently died without issue.

The only child of Ulufale-Leoo having issue was the child Ta who had married Namu of Fagalua. If this is so—that the "pule" was given to Ta—what was the object in doing it? There was only one object—and the Court is unanimous on this—that the "Pule" should rest in the name Ulufale, otherwise there would be no necessity of doing this because if they did not desire the "Pule" to rest in the name Ulufale it would have been given to someone else. How are they to retain the "Pule" then in the name Ulufale if there has been a "pule" given out to a member of the Ulufale family? Again because if they did not desire the "pule" to rest and vest in the name Ulufale why did they not give the "pule" to Namu who was the husband of Ta and to whose family Ta now belonged by marriage?

The testimony of the objectors goes on to show that from Ta the "pule" was passed on to Lolousi. Again a woman!

■ If "pules" exist how shall they be passed on? There is only one answer to that question and that is—they shall

334

be passed on whenever possible through the male branch of a family, as the male branch absorbs the female branch and the female branch does not absorb the male branch. This is Samoan custom. This is Samoan history. And there is no instance existing in American Samoa today, according to the testimony of a witness, where the "pule" of a name rests with a woman.

There was another child born to this marriage of Ta and Namu and that was the child Luafaga, a male child, according to the testimony of the objectors, and that male child was right there to take that "pule" on and carry it down in the name Ulufale, which was the object of the "pule" if ever a "pule" existed in the name.

But what has occurred according to the testimony of the objectors? The "pule" is carried further and further away from the Ulufale family until now at the present time there is a desire on the part of certain people to vest the "pule" not only in the name Auala but also in the name Sagapolu.

According to the testimony submitted by the objectors Luafaga had descendants, and here the contesting parties in this action begin to agree as to who were the Ulufales.

Was there any necessity of anyone going to Luafaga and telling him to appoint his son Ulufale? I think the Court quite agrees that if any conversation took place Luafaga undoubtably said to his son Sagalimu "Sagalimu you take the name Ulufale." That's what occurred. That's Samoan custom, and it is very unlikely that the "pule" rests with a member of the family so far removed.

Now the Defendant in this action and the representatives of the defendants have testified that the "pule" descended down in a regular line from Ulufale to Ulufale, designation being made by the previous Ulufale as to who the next Ulufale should be.

Disagreement between the two parties in the action is had as to the designating of the third and fourth Ulufales. From the fifth Ulufale—Ulufale Sagalimu—on down there is no disagreement.

■ What has Samoan custom prescribed as regards the naming of Matais? It has prescribed almost invariably up to the time the flag was raised in American Samoa that the previous "matai" designated the next succeeding "matai".

The sixth Ulufale was Ulufale Setefano. The Defense testifies that Setefano was a child of Ulufale Maae. The Plaintiff testifies that he was a grandchild of an adopted son of Ulufale-Leoo, and that he was appointed to the name by Auala.

Did Auala appoint Setefano to the name? Rather if he had the "pule" in his power he would have appointed a member of his own family. Human nature is human nature.

Is there any real reason why Setefano was not appointed by the previous Ulufale? Was it not according to old Samoan custom that the appointment was made by the previous Ulufale?

The question was asked by the Court "What was the necessity of Lolousi having the 'pule' in the name" and what was the answer? Because her brother was in Upolu. Did it necessitate the "pule" resting in a woman to designate the son Luafaga to the name Ulufale when all that was necessary was to send him word to come back and assume the name? The Court cannot find that the necessity existed of the "pule" being vested in the way testified to by the Plaintiff in this action.

There is another strange thing in connection with this testimony that it seems Auala in exercising his "pule" according to the testimony of the Plaintiff in this action exercised it by designating a person as Ulufale, who, according to their testimony, was an adopted son. Was that

336

the way he exercised the "pule"? Was the Ulufale family in such a condition but that at all times none but adopted children, according to their testimony, could be appointed to the name. I cannot help but feel that the Aualas have been fine men. I cannot help but feel that in view of the testimony of the objectors that Auala is a direct descendant of Ulufale and it is the desire of Auala that Ulufale at all times should be a direct descendant, that had this man whom he designated not been a direct descendant he would have appointed one of his sons who as they claim are direct descendants.

If he was not interested in the name he ought not to have had the "pule" and if he was interested in the name he should have appointed a blood descendant and the Court believes he did, because he would not have appointed Safue to the name when he had his own sons available at this time who, as they have testified to, were blood descendants.

But was not something contrary to old Samoan customs going on? Was not the old custom that the name would be designated by the previous Ulufale to the next succeeding Ulufale up to the time the flag came here?

The testimony of the objectors is to the effect that Auala appointed Ulufale-Mu. The Court is compelled to believe that if Auala appointed Ulufale-Mu he appointed someone who was a blood descendant as Auala had the interest and the perpetuity of the strain of blood of the family at heart at all times and would have appointed no one else than a blood descendant.

The Court is not denying that because of the evidence given by both sides that the Auala family is related to the Ulufale family. The Court is of one mind on this proposition that there is a relationship existing, that there is a right in the Auala family in the name the same as there is with other remote families in the name, but if there is

any "pule" that exists in the name at all the "pule" exists in the name Ulufale and not in the name Auala.

■ What is a "matai"? He is a man that is at the head of a family. He is the man that has the family affairs in charge. He is the man that all the members of the family look up to. He is the man they come to for advice. He is the man they come to for direction. He is the man they come to for everything, practically.

And if he is not the type of a man and a man that can assume the responsibilities that I have just mentioned he is not the man to be a "matai". And if he is not that type of a man the family soon weakens and breaks up and eventually if weak "matais" are continually appointed the position of the family dies out.

In view of the fact that a man of this type is required to hold the position the next question that comes up is this; and shall decide as to your man: Who or what is the best judge of whom that person shall be?

■ Under the old Samoan custom, wisdom was exercised at times but that very human trait, jealousy, very often entered into matters of this sort because of the authority that one person had to designate who should be the "matai". As a result of this jealousy existing, what occurred? Family troubles followed strife and perhaps war, death and destruction. And the time has now come in the history and the life of Samoa when that method has changed to some extent, and perhaps will continue to change further. The family has become more prominent and the "pule" is gradually growing in the rest of the members of the family and not so much in the individual. And that is as it should be.

The most powerful government in this world today is the government whose flag flies right here, and that is a government "by all the people" and not a government of

one man. I do not mean to say that we do not have powerful men in the United States and strong men just as you have powerful men and strong men in your families here who will dominate the family to some extent but they will also consider the wishes of the family. The family will be just so strong as the support that it receives from the members of the family.

Now there are other circumstances to consider in this proposition. How has the candidate for a "matai" name been conducting himself? What interest has he shown in the family? Then that man should be the "matai" who is a blood relative, a close blood relative; who has shown by his conduct that he is capable of handling the affairs of the family, and has shown by his actions that his every interest is in the family. He must absolutely have the unqualified support of the entire family at all times—all branches at all times—because of his acts or attitude towards the family and towards the family property.

 Now, no more than a single man who had the "pule" will be always infallible, will all the members of the family be always right. The members of the family will not be right if they do not take into consideration these things that I have just mentioned. Is their candidate a true descendant? Has he been rendering service to the family? Has he been taking care of the property of the family in the way that he should. If the family has not taken these things into consideration the family is neglecting its duty.

According to the testimony shown as regards this man Tanielu whose name was sought to be registered by members of the Ulufale family Tanielu does not live in Futiga. He lives in Iliili. It shows that he has not been occupying any of the properties of the Ulufale family. The testimony does show that the man is qualified by relationship and ability to hold the position.

The Court is of the unanimous opinion that the young man although he is educated, and qualified by relationship to hold the position is not sufficiently intimate with the properties involved to hold this name and hold it successfully. This the Court must decide, but it is no reflection on the young man.

What does the testimony show? It shows that Ulufale-Mu has a son by the name of Ala. That this young man Ala, in keeping with the testimony on both sides, has been continually occupying these properties; that he has constantly rendered service to Ulufale; that he is a direct descendant of the second previous Ulufale and thus is qualified by relationship.

He has occupied and cultivated the lands and harvested the products of the lands in conjunction with the family and in accordance with testimony submitted by both sides of this action.

Again the Court says that the decision has been left with the Court. The Court will decide, and it is the unanimous decision of the court that the man Ala who is the eldest son of the previous Ulufale—Ulufale-Mu—shall hold the name Ulufale.

■ It is the further judgment of the Court that the "Pule" in the name shall rest in the family Ulufale. That Ulufale himself shall be guided by the wishes of a large majority of the members of the family. That on a decision where the family is closely split on the proposition that Ulufale shall then decide as to who shall hold the name.

And if there be no Ulufale living—no person who has held the name Ulufale—the closest blood descendant in the highest degree of the next previous Ulufale shall decided [sic]. This of course involves the proposition of the person deciding having reached the age of discretion.

No Court can take a [sic] prescribe a rule of procedure that is to be followed for years and years and do it successfully. Therefore the procedure will be this and the Court trusts the practice will be the same: That the majority of the family will decide as to who shall hold the "matai" name, taking into consideration the relationship of the candidate for the name Ulufale. Taking into consideration his character. Taking into consideration the fact as to whether he has been living with the family and rendered service or not. And the majority shall decide.

If the family is so split that it cannot agree, the previous "matai" Ulufale, if he is living, can step in and decide who shall be the "matai". If he is not living, as the Court has already stated, the closest male true descendant in the highest degree of the name Ulufale may decide but this decision shall not preclude Court action.

Candidates to the name will be taken with the closest relationship and be considered until right on down the line someone having all the qualifications and satisfies the family and those in authority, who will be the leading members of those in authority, has been decided upon.

The Court costs in this action as hereby assessed in the amount of $75.00. $50.00 of which shall be paid by the Plaintiff and $25.00 by the Defendant. These costs shall be paid within thirty days from this day.

This 16th day of October, 1922.